Filed 12/21/20  In re O.C. CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re O.C., a Person Coming Under Juvenile Court Law. | B304382 |
| _____ | (Los Angeles County Super. Ct. No. 19CCJP07293A) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff and Respondent, | |
| v. | |
| E.T.-C., | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Kim Nguyen, Judge.  Affirmed.

Jill Smith, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, County Counsel, Kim Nemoy, Acting Assistant County Counsel, and Peter Ferrera, Principal Deputy County Counsel, for Plaintiff and Respondent.

_____

*INTRODUCTION*

Mother appeals the juvenile court's finding of detriment and the resulting decision not to give mother custody of her six-year-old daughter at disposition.[1] We affirm because mother's history of failing to protect daughter supported the court's detriment finding.

*FACTUAL AND PROCEDURAL BACKGROUND*

*1.    Dependency History*

Daughter has three older siblings who were declared dependents of the juvenile court in 2010 as the result of father's history of substance abuse and mental and emotional problems. Family reunification services were offered to father and the three other children's biological mother, N.D., but reunification was unsuccessful. In November 2012, the juvenile court terminated father's and N.D.'s parental rights to the three older siblings, who were then adopted.

Four months later, in March 2013, daughter was born to father and N.D. In 2015, the juvenile court declared daughter a dependent of the court after N.D. failed to comply with court-ordered treatment.

Father met and married mother in 2015.[2] In March 2016, while father was receiving family reunification services to obtain

---

[1]    Mother is daughter's presumed, not biological, mother. The biological mother lost custody of daughter in 2017. We use "mother" to refer to daughter's presumed mother, the appellant here. We refer to the biological mother by her initials. N.D.

[2]    Mother had a prior child welfare history in San Bernardino County involving her biological children, who are now adults. December 1993 allegations of physical abuse were deemed unfounded. May 1996 allegations of general neglect and October 1996 allegations of physical abuse were substantiated. She did not know father at the time of those events. Due to the passage

custody of daughter, a referral was generated accusing father of physical abuse and mother of general neglect. It was reported that father had slapped daughter's older half-sibling and that the half-sibling saw father choke mother. The half-sibling later denied seeing father assault mother. Allegations against mother were deemed unfounded, and DCFS deemed the physical abuse allegations against father to be inconclusive. No petition was filed.

In 2017, the juvenile court terminated jurisdiction over daughter, released her to father's sole custody, and granted N.D. supervised visitation.

## 2. *Father's Violence Toward Mother and Daughter*

Daughter, father, and mother lived together as a family for three and a half years. Daughter developed a close relationship with mother and called her "mom." During the marriage, father became physically and emotionally abusive toward mother. On one occasion when mother permitted her adult daughter's boyfriend to visit at the family home, father became angry, grabbed mother, and threw her down. On other occasions, father punched mother and attempted to suffocate her. Another time, father grabbed the steering wheel of the car mother was driving and tried to veer the car off the road. On another occasion, shortly after mother had a medical procedure, father pushed mother. In March 2019, with daughter present, father hit mother in the back of her head.

Father was also violent toward daughter. He disciplined her by spanking and hit her with a belt. The abuse caused bruising. One time, father took a knife from the kitchen and put

_____

of time, the Department of Children and Family Services (DCFS) had limited information about mother's prior child welfare history.

it near daughter's head, threatening her. Mother was nearby when this occurred but did not intervene.

Mother was aware that father was " 'bipolar and [had] borderline schizophrenia,' " having gone with him to see his psychiatrist. Mother knew father took his psychiatric medication sporadically and was unable to care for daughter when he was not on his medication. Mother understood that father had anger management issues, mental health issues, and was unstable.

Father and mother separated in March 2019 due to father's mental health problems and domestic violence. After they separated, daughter was left in mother's care for a month, until late March or early April 2019, at which time father took custody of daughter.

On July 9, 2019, after father slashed mother's tires and threatened to blow up her car, mother obtained a one-year restraining order against him. In August 2019, mother ignored the restraining order to see daughter.

Over the summer and into the fall of 2019, father and daughter were homeless, living in father's car and in motels. Sometimes, father took daughter to stores and bathed her using sink water. During this period, mother often brought daughter clothes, other personal necessities, and shoes.

### 3.  *DCFS Investigation*

On October 28, 2019, DCFS received a referral that the previous day father struck an individual with his vehicle while daughter was with him. According to the report, father and daughter were homeless, and daughter was hungry. When the investigating social worker met with father at his motel, father denied abusing substances but admitted to a history of drug use. He declined to submit to drug testing. Father said he took medication for anxiety and depression and soon would be

4

obtaining housing.  Father later admitted to relapsing and using methamphetamine.

On November 8, 2019, DCFS received a referral that father had been arrested for child abuse and resisting an officer.  Law enforcement reported father and daughter had been living in his vehicle for more than one month.  When a welfare check was conducted, father was charged with resisting an officer.  Daughter reported that father spanked her.

On November 12, 2019, DCFS interviewed mother.  She reported father had hit her when he was having a manic episode in March 2019, and he left their home.  Mother stated father had been diagnosed with bipolar disorder, attention-deficit hyperactivity disorder, and schizophrenia.  Mother explained that she did not contact DCFS after father retrieved daughter from her home because she was able to check on daughter.  Her efforts to provide for daughter included supplying daughter with clean clothes and other necessities, and contacting relatives for assistance in caring for daughter, without success.

In December 2019, mother denied knowing father and daughter were homeless.  She explained she did not bring them food, but provided money to father for McDonald's.  When she observed daughter in October 2019, mother thought daughter had gained weight.

That same month, the biological maternal aunt (N.D.'s sister) told DCFS that she was concerned about mother's ability to protect daughter.  The aunt said mother had been aware father and daughter were homeless for eight months as she had provided food and clothes for daughter during that time.  When the aunt had seen mother in court, mother told her, " '[father] beat the shit out of me.' "  Mother told the aunt that she had a restraining order against father but removed it because she wanted to see daughter.  The aunt felt concerned that mother had

not called the police or DCFS even though she knew father was violent. The aunt said daughter had told her that father was mean and had hit her and mother.

### 4.     *Section 300 Petition and Detention*

On November 13, 2019, DCFS filed a Welfare and Institutions Code section 300 petition alleging daughter was at risk of serious physical harm as the result of father and mother's violence, father's reckless driving with the child in the car which included striking one or more individuals with his vehicle, and father's mental and emotional problems.[3] The petition identified only father as the offending parent.

At the November 14, 2019 detention hearing, the juvenile court ordered daughter detained from parental custody. On December 3, 2019, the juvenile court deemed mother to be daughter's presumed mother. Daughter was placed in the biological maternal aunt's home.[4]

### 5.     *Jurisdiction*

Mother was and father was not present at the January 8, 2020 jurisdiction hearing. The juvenile court admitted the DCFS reports into evidence and heard argument from counsel. The court sustained an amended version of the section 300 petition, including counts indicating father had been violent towards mother in daughter's presence and that his mental health issues placed daughter at substantial risk of harm. The daughter's attorney reported daughter wanted to be released to mother's care. The court continued the disposition hearing to the next week.

---

[3]     All subsequent statutory references are to the Welfare and Institutions Code.

[4]     One of daughter's biological siblings–an adult–lives in the aunt's home.

6

The following week mother enrolled in a domestic violence program. On January 15, 2020, DCFS conducted a home assessment of mother's one-bedroom apartment, which appeared clean and orderly. Mother reported that she last saw father in juvenile court and prior to that, she had not seen him in "a while."

**6.      *Disposition Hearing***

At the January 16, 2020 disposition hearing, the juvenile court received into evidence written confirmation that mother had enrolled in a domestic violence program two days earlier.

Mother also testified at the hearing. She acknowledged violating the restraining order in August 2019 because she missed daughter and wanted to see how she was doing. Mother testified her relationship with father was not healthy and admitted to staying in an abusive relationship. She acknowledged it was not a safe environment for her or daughter. She testified to father's violent acts which we have already summarized. Mother explained that daughter was present only at the March 2019 incident at which father struck mother in the back of the head.

Mother testified she had not attended any treatment programs during the time she was in a relationship with father but was now enrolled in a domestic violence program. She needed to heal so she would not enter into another violent relationship. If father called her today, she would not answer the phone.

Mother believed it was healthy for daughter to continue to have a relationship with father. Mother denied knowing that daughter and father had been homeless or living in father's car. She said she would have called child welfare services if she had known they were homeless.

Mother also testified that prior child abuse allegations were made against her in San Bernardino in 1996, but her children were never removed from her custody. Mother said she presently had a one-bedroom apartment where daughter could live with her. Mother planned for her and daughter to eventually live with mother's older children. She would continue to allow daughter to see the biological maternal aunt as they had an established relationship.

Daughter's attorney argued that daughter was conflicted – she was comfortable living with the biological maternal aunt but also wanted to be released to mother. Daughter's attorney expressed concern about reunification with mother if daughter was placed with the maternal aunt. She explained the maternal aunt was very against father having contact with daughter and considered mother "guilty by association."

Mother's counsel argued there was no evidence mother was having contact with father and urged the court to give greater weight to mother's statements than those of the maternal aunt. DCFS stated it disbelieved mother's statement that she did not know father and daughter had been homeless.

The juvenile court declared daughter a dependent child and ordered her removed from father's custody. The court denied mother's request for custody, made a finding of detriment by clear and convincing evidence under section 361.2 with respect to mother, and found there were no alternative measures the court could implement to avoid removal. The court reasoned:

> "There's ample evidence that there's been ongoing domestic violence between [father and mother]; that [mother] did not take adequate safety measures to protect [daughter] from this domestic violence. She indicates that it all happened behind closed doors, but for the very last incident, which

8

[daughter] clearly witnessed. But simply because it takes place behind closed doors, I don't think obviates the need to protect the child.

"[Mother] went and got a restraining order, but she herself testified she violated the restraining order. I also did not find credible the testimony that she did not know [daughter] was homeless with the father because the detention report indicates on page 11 that, per [mother], she did not contact [child welfare services] because she was checking in on the child with the father, provided the child with clean clothes and [other necessities], thus indicating she understood the child was in a dire situation.

"So I do have concerns, serious concerns about [mother's] protective capacity, the ability to draw boundaries with the father at this juncture. Given her violation of [the] restraining order that she herself sought. And while I think it is promising she's in domestic violence [treatment], I see the enrollment as early as January of this year, and I just think, based on the long-standing domestic violence, [DCFS] has met their burden by clear and convincing evidence . . . ."

The juvenile court ordered family reunification services for both parents, and specifically for mother to attend individual counseling, domestic violence treatment for victims, and parenting classes. The court stated any concern about the biological maternal aunt thwarting reunification was a separate issue from the question of detriment posed by mother and could be addressed if it became an issue. The court set a progress hearing to address any reunification concerns, as well as a date for the six-month review hearing.

Mother appealed.

## DISCUSSION

Mother contends the evidence does not support the juvenile court's order declining to place daughter in her custody. When a child is removed from parental custody (here, father's), if a noncustodial parent (here, presumed mother) requests custody, the juvenile court must place the child with that parent unless it finds by clear and convincing evidence that placement with the parent would be detrimental to the safety, protection, or physical or emotional well-being of the child. (§ 361.2, subd. (a); *In re K.B.* (2015) 239 Cal.App.4th 972, 979.)

"The standard of proof known as clear and convincing evidence demands a degree of certainty greater than that involved with the preponderance standard, but less than what is required by the standard of proof beyond a reasonable doubt. This intermediate standard 'requires a finding of high probability.' " (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 998.) When "the clear and convincing standard of proof [is] applied in the trial court, an appellate court should review the record for sufficient evidence in a manner mindful of the elevated degree of certainty required by this standard." (*Id.* at pp. 1000–1001.)

Here, substantial evidence supported the juvenile court's detriment finding. Mother remained in an abusive relationship with father for years despite the physical risk posed to daughter. Although daughter may have only witnessed a single incident of domestic violence, daughter's proximity to that violence placed her in danger. " '[D]omestic violence in the same household where children are living . . . is a failure to protect [the children] from the substantial risk of encountering the violence and suffering serious physical harm or illness from it.' [Citation.] Children can be 'put in a position of physical danger from [adult]

10

violence' because, 'for example, they could wander into the room where it was occurring and be accidentally hit by a thrown object, by a fist, arm, foot or leg. . . .' " (*In re E.B.* (2010) 184 Cal.App.4th 568, 576, disapproved on other grounds in *Conservatorship of O.B., supra,* 9 Cal.5th at p. 1003, fn. 4.)  Even after obtaining a restraining order to protect herself from father's violence, mother ignored the order and continued to contact father.

Mother also witnessed father's violence toward daughter and did not act to protect daughter from it.  Father spanked daughter, hit her with a belt, and threatened her with a knife in front of mother.  Mother also failed to notify DCFS when father and daughter were homeless, knowing at that time, father was not taking his psychiatric medications (which mother admitted were necessary for father to properly parent).  Mother argues she "did the best she could do under the limiting and restrictive circumstances."  The trial court reasonably found otherwise.  The record shows mother did not protect daughter from father and that she facilitated his endangering conduct by not alerting DCFS.

Although mother argues that "the juvenile court's supervision was the precise safety measure needed to allow [daughter] to remain with Presumed Mother," the record shows that mother continued to ignore court orders by contacting father.  Even after DCFS became involved, mother maintained contact with father.  DCFS reported that when mother did not have a visit with daughter around Thanksgiving, father called DCFS and spoke to a supervisor asking for an explanation.  DCFS expressed concern that father knew what was occurring with mother and that they were continuing to communicate despite mother's active restraining order against father.  Substantial evidence supported the trial court's conclusion that no measures

11

other than placement with maternal aunt would protect daughter.

### *DISPOSITION*

The court's dispositional order is affirmed.


                              RUBIN, P. J.

WE CONCUR:



BAKER, J.



MOOR, J.


12